20-607-16, Jordan v. Evanston. Mr. Welsh, whenever you're ready. May it please the court, Vic Welsh on behalf of Braylon Jordan and his family. When Evanston Insurance Company denied coverage in this case, its insured Craig Zucker exercised his right under New York law to enter into a settlement which resulted in the entry of a final judgment collectible against insurance assets only. That was his right under New York law. Under New York law, when an insurance company denies coverage, the insured may make a reasonable settlement rather than proceed to trial. The Jordans presented the final judgment that was entered in the product liability case in this DEC action for collection. Evanston filed for summary judgment claiming that the only path to recovery was through a jury verdict in the product liability case. And as the argument went, because there was a jury verdict in the underlying product liability case on behalf of one insured, Max Field in Oberton, then there was no coverage for the Zucker settlement and final judgment on behalf of another insured, Craig Zucker. Even though the settlement involved all claims and the product liability case involved only one claim, the district court committed clear error when it adopted Evanston's argument. The district court granted summary judgment based solely on the fact that a finding of no liability against one insured on one claim, defective design, determined coverage for another insured involving all claims, including defective warnings and other claims asserted against Mr. Zucker individually. The Zucker settlement was contested by Evanston, presented for approval in the district court, and approved by the district court in the underlying product liability case. Evanston now concedes that Zucker had the right to do that, that he had the right to settle, and that the Max Field and Oberton jury verdict was not determinative of coverage. They say that at page 37 and 41 of their brief. So now what they do is they go back and make an argument that they made in the product liability case when the settlement was approved. In response to the argument that Evanston makes is that the Zucker settlement did not resolve covered claims and that Mr. Zucker did not have a reasonable anticipation of liability. In response to that argument in the product liability case, the Jordans argued that the settlement resolved covered claims for individual corporate officer responsibility. Counsel, what if there was no claim made? This is the direct appeal, and I'm going to get to that in the cross appeal. I'd like if you could get to that first. It's sort of a threshold question, isn't it? Yes, yes, absolutely. Well, that's why I ask, because in my mind, correct me if I'm wrong, but if there was no claim, no valid claim made, it doesn't really matter, right? That's exactly right. And I will go to the cross appeal and come back and see if the court has any questions about what happened in the product liability case in the context of our collateral stop on res judicata arguments. To get to the court's question, I agree, if no claim was made, there's no coverage. So that's the answer. The DEC action was separately filed when Maxfield and was tried on the issue of notice. That is, when Maxfield and Overton received first notice of the Braylon Jordan claim, the district court denied cross motions for summary judgment. Went to a bench trial. And went to a bench trial, which was stipulated, too, by the parties. And in the stipulation, the parties stipulated that the issue for trial was the issue of first notice when the claim was first made. But then it gets a little confusing. Just jump to the order. Judge Ruiz, it's a short order. He explicitly says he's pretermitting the difficult issue of whether the news articles could be claims. Yes. And am I right that he essentially says, with that extended duck concede at the end, that they treated it, they received and recorded it as a claim. Hence, it's a claim. Yes. There's no question that that's the case. Evanston takes issue with the district court's methods and findings because they primarily relate, as Your Honor recognized, to the manner in which Evanston internally handled the claim. But in those two paragraphs, the district court gives us no law supporting an estoppel-type theory. But in a footnote, the district court acknowledges that our Majalis decision suggests that how insureds communicate and inquire couldn't be determinative, right? This is not estoppel. Okay. It's not estoppel. Okay. And I'll tell you why. This is an admission of coverage. Estoppel would apply, for example, if Evanston treated the matter as an occurrence internally, recorded the matter as an occurrence, talked about it being an occurrence, and then sent a letter to Mr. Zucker saying it's a claim. Under those circumstances, you would argue that Evanston was estopped from arguing that it was anything other than a claim because that's what they told their insurer. But in this case — And then the insurer would detrimentally rely. Exactly. But you're saying it's not that. It's not at all. Am I wrong to think that Judge Reeves thought it was an estoppel case? Or do you think he articulates what your — I think initially he thought that's where the case might be headed. I don't think anybody anticipated. I certainly didn't that Evanston would admit that what they received was a claim. So, again, getting back to the question about estoppel. Well, no. Now I'm in real suspense. What's the record site for the admission that this is a timely made claim? What are you relying on as their admission? Their admission is the testimony of their corporate representative in the record where he testifies that what he received — I asked him what this was that was received by Evanston, and he said it was a claim for bodily injury. And you understand one of the issues that Evanston raises in their brief is that it's not the communication between the insured and the carrier that determines the claim. It's the communication between the injured party. The third party and the insurer. Exactly. And that's what Evanston received. They received the communication. But now you're relying on the June article, right? When the Jordans say, wish they were banned. Well, yes. What communication is that to the insurance company? It was to a media outlet. That was not an issue in the case, Your Honor. All parties agreed that the claims could be informally made because of the Internet business. Well, informally made, are you going to hold insurance companies to recognizing claims based on stuff that's out in the media? No, I'm going to hold insurance companies just like the judge did and just like New York law allows to what they admit is a claim. If they admit it's a claim, does that mean we take that? Well, the answer is yes. I'm just struggling that a person says something to CNN. Well, I think these ought to be banned. Right. And yes, it gets its way to the insurance company. That article does. Sure. But, I mean, I'm just struggling to see how that's a claim. Well, can we look at the definition of a claim? Well, before you do, because I'm saying, Kerry, do you have any case? Sure. Listen to my question. Where a quote made to a news outlet constituted a claim. Can you think of any case? No, and I don't think that's a fair question because determining what a claim is under the Majalis case, it's done on a case-by-case basis. I'm just wondering, is there a case where we see a third-party demand, assertion, to the insured that there's liability or loss? No, that's not in the briefs. But here's the disconnect between this argument and the law. Okay. Here's the disconnect. They want the court, Evanston wants the court, to look at the four pages of a document and say, does this constitute a claim? And they want it to look to that document to the exclusion of the policy language and to the exclusion of their admissions. So what the courts did, pretermitting that looking at that page, the law allows him to look at the rest of the policy. It's a familiar standard. You look at the policy, the entire policy, in order to determine the definition of undefined terms. And claim was an undefined term. Didn't he say it quacks like a duck and walks like a duck? That's correct. I mean, is that our analysis? Well, it's analysis under New York law. And the court was asking for the cases. We cite them at page 38 of our brief. When claim is not defined, the court looks to the other language of the policy, and specifically the notice provisions of the policy. The four cases that we cite all say the same thing. The court determined the definition of a claim based on the notice provisions of the policy. And I remind the court, it wasn't just an admission that this was a claim. It was an admission that what was received met all the requirements for a formal notice of claim under the notice provisions of the policy. And again, this goes back to the point I was making. That's the disconnect in Evanston's legal argument. They don't want the court to look at those cases which allow the district court and require the district court to look into the policy, to look at the other definitions, the other words of the policy to find the undefined. But a claim still has to be a third party's assertion. Okay. A demand. You agree? I do agree. I do agree. And then the other thing they want the court to ignore is the claim. But then where was that? Describe where that – where was the Jordans' demand to – In the CNN article. In the CNN article. That the buckyballs be banned. That they be banned. And where – How's that a claim? I just have a record question. Do we know, is it undisputed that Evanston even got that article? It didn't matter. They'd already set the claim up.  They'd already recognized and accepted it as a claim. But answer my question. Does the record reflect whether they got that June CNN article? The answer is no, and that's not a fair question. Because – Okay. I'm asking a lot of unfair questions. I know. I don't think that's – And the reason is because they'd already set the claim up. It was already a claim. But that gets back to Majalis. Then you're saying that what becomes a claim depends – let me finish my question. It'll be a fair one. Then you're saying that it is how the insured and the insurer treat something. So maybe they're a little sloppy and informal on distinguishing between occurrence and claim. But I thought Evanston's file said claim slash occurrence. So they plop it all in there. Why is that determinative then of it being a timely claim? Because I asked Evanston on the record to show me one document that indicates that it was recorded as an occurrence. And his response was it doesn't exist. That's one of the problems I have with meeting Evanston's argument. Because they make these arguments that it was an occurrence, but they have no evidence to support that. It's an assumption that was made by counsel. But I thought there was a lot of internal documentation in Evanston that they keep saying, as far as we know, no claim yet. No. No, no. The documentation – and we talk about that in our briefs. The documentation says no claim filed. That's why they denied this claim. They thought a claim had to be filed. Evanston talks about it in those briefs that the documentation said no claim made. It didn't say that. It said no claim filed. And we talk about that in our briefs. If I can get back to the court's core question of whether or not this – and I apologize if I'm jumping around. But Judge Wilson asked me, is this a claim? The answer is yes. And the reason is because you look at the definition of a claim adopted by Evanston and adopted by the district court. And it talks about a claim in terms of potential liability or the possibility of liability, the possibility of defense costs. I've got it right here. And virtually any assertion of an exposure to liability within the risk covered by the policy is a claim. Virtually any exposure. And it talks – If it's made and submitted by a third party. And – no, no, no, no. If it's submitted by any party. If it's submitted by any party. How does I Want Buckyball Banned suggest a legal right rather than this company is – That is a fair question. The reason that that creates a lie and the request for a ban is clearly an indication of Megan Jordan doing something that would affect the product, to get the product banned. And now will you agree we're on territory the district court's never had a chance to assess? Because it said this is a difficult issue and I don't need to get there. Well, again, I don't know how many grounds we have to win on. It was not – Well, if you don't have a claim of legal liability, you don't have a claim. But that was – again, I'll – the district court was entitled to look at the admissions and then look at the way they treated it internally. That's what the law is. They haven't cited a single case that says that that can be excluded. But let me get back – if I can get back to the ban, I don't – Why don't you answer his question, counsel? Yeah. Well, I'm just – refresh my memory. In the policy itself, if we're going to go on the policy language, where in the policy does it indicate that a company – the company's internal handling or designation of this could rise to notice or a claim? Well, it's not in the policy. It's in the case law. We cite the – I think it's the Spoletta case, but it's this Pearson Capital case. The insurance company in that case admitted that what was received was a claim. What was received? Right. That's – but – okay. I'm sorry. But let me get – I've never been able to complete why the ban is a claim. It is clearly a request by Megan to do something. And it certainly suggests the possibility of a formal proceeding. I think we would all agree on that. In front of Congress? In front of anybody. The possible – a possible formal proceeding. In this case, in front of the Consumer Product Safety Commission. We know. But at the time the statement was made, don't look forward. Stop. Look at when the statement was made. She's asking for a ban. She wants a ban. That's a formal proceeding. And it arises out of what? An injury to Brayden Jordan. A bodily injury to Brayden Jordan as a result of his ingesting buckyballs. That is a risk that is covered under the policy. That's where the claim is made. You can't put any more of a burden on an insured to try to figure that out as to whether she's talking about going to Congress, going to the Hague, going to the Consumer Product Safety Commission. She said I'm going to – You've probably saved time in rebuttal. And I assume this argument that the June ban buckyball was the claim, this argument that you're making now, is the argument you made to Judge Rees below? Absolutely. That's in our – we talk about that in our server plot brief. We went item by item, line by line. Pleading by pleading. Right. Okay. Thank you, Counsel. You have time for rebuttal. Mr. Hacker? Thank you and good morning, Your Honors, and may it please the Court. As the Court's questions have already suggested, I think the Court recognizes that there's a simpler path to resolving this appeal, and that is to hold that the Jordans did not make a claim against M&O during the Evanston policy period, as the Evanston claims made policy unambiguously requires. The requirement that a claim be made during the policy period to trigger a claims made policy is the defining feature of such policies, to what makes them different from and vastly cheaper than occurrence-based policies, which are triggered merely so long as a covered accident occurred during the policy period, even if no claim is made until years or even decades later. Claims made policies avoid that long shadow of potential liability, making coverage more affordable. And drawing clear lines about what qualifies as a claim is incredibly important for policyholders, because it minimizes their potential confusion and disputes. If a claim is defined too broadly, policyholders are going to end up losing coverage, Your Honors, when they fail to report claims that they didn't even recognize as claims. But I'm sympathetic to the District Court's clear impatience that every single thing done by the insured in your company looks like you all were watching the Jordans accident and tragedy carefully, had it in files that called it a claim, and why wouldn't that mean the insured would then, you know, assume that they had the $10 million excess coverage? So a couple of points on that. First of all, going straight to the what happened, an insurance company in a claims made policy, occurrence doesn't matter. I mean, it matters a lot. It's necessary for coverage, but it's not sufficient. There's only going to be coverage when a claim is made. So it makes absolutely no sense. What about the concession that counsel opposite says Evanston made, that it was a claim? So the concession doesn't exist, is the answer. What Mr. Wright said in the deposition testimony, I'm sure you've looked at it. I believe this is what counsel is relying on when they repeat in their brief that this is a claim for bodily injury. That's it. Remember that passage. If you read the deposition testimony in its entirety, the question is asked about how they treat losses and claims, and what the deponent says is loss is a claim, is an accident, is an occurrence. They're all sort of. We stick it all in one file. Yeah, because there's only, at the end of the day, there's only coverage for claims. And so you open a file when you get a notice of occurrence because a claim might be made. You wouldn't open an occurrence file because there's no sense in opening an occurrence file. Claims is what triggers coverage. And, of course, under the policy, there's a requirement that you give a notice when an occurrence happens, and that's exactly what M&O did, complying with that, because they wouldn't have coverage, even if a claim had been filed, if they hadn't given timely notice of an occurrence. So they gave timely notice of the occurrence. And then, as Your Honor says, everybody's waiting for a claim to be filed, a claim to be asserted, a claim to be made, not just filed. The notes. It is not just filed. It's made. And so let's imagine the injured party says, I know exactly who injured me. It's the insured, and they need to be ended. Their business needs to stop. That sounds like sort of the very capacious description of a claim. That's saying there's liability here, and I can even tell you who's liable. Why isn't that enough to be a claim? So a few answers. First of all, this court and others have consistently defined a claim as, and this is the Fairchild case in the Second Circuit that everybody kind of agrees defines what a claim is, an assertion by a third party that in the opinion of that party, the insured may be liable to it for damages within the risks covered by the policy. So we have the third party identifying the insured, claiming a loss, a tragic loss. So what's missing? Well, there's a number of things. First of all, if you're referring to the June article, that's the issue. That's the only one that's used. And that's good. So there's lots missing there. First of all, it was never reported to Evanston, as the policy requires. So the absence of reporting ends the issue completely. Second. Did you understand opposing counsel to concede that? I did. I heard him say there's no evidence that it was reported, and that's the reality. I don't know that he conceded that that means there's no coverage. I think he thinks he still has a claim for the confusing reason that a claim file had already been opened. That doesn't establish that the June on its face, that doesn't establish that the June article qualifies as a claim. So the other reasons, again, referring to the June article, is as this court in Judge King's opinion in Majalis said, even a specific formal demand for corrective action does not suffice to establish a claim. Regulatory compliance, demand for regulatory compliance, that's the holding of Majalis, because that's what happened there, was held not to qualify as a claim. So to the extent that just seeking regulatory action by the CPSC saying to the press, I wish there was a regulatory action by the CPSC, does not qualify as a claim. Are you aware of any cases anywhere where a statement to the press was construed to be a claim? So, no, and that was my third point, which is a statement to the press is an incredible problem for the Fifth Circuit. A statement to the press can qualify as a claim, because that's going to put the onus on policyholders to be constantly out there looking, scouring the Internet, looking for potential statements in the press. Otherwise, what's going to happen is they're not going to notice it, then they're going to seek coverage later, and the insurance company is going to say, well, there's under the Fifth Circuit rule, the statement was made in the press, that was the claim, and that happened in a prior policy period. Had the insurance said it to them, would you say then it's a closer question? I think it would be a different question. It depends on the policy language whether or not the insurer's knowledge of a statement would qualify as a claim. But all I'm saying is there's no case that I'm familiar with that has said a statement to the press qualifies as a claim. Now, it's true that this particular insured, because he was in the Internet business, made it his own practice to scour the Internet. But the rule of law, and therefore he noticed it in the press, but the rule of law has never been that a statement in the media that's not a submission of a demand for money or other specific legal relief. Absent that, I'm aware of no case that says that would qualify as a claim. When did your policy period terminate? In July? Yeah, July 25, 2012. And do I remember the record that the insured was actually looking right up on the last day, trying to notify you of anything found? Is that roughly right? That's my understanding. And then you're opening files, and your argument to us is that's just recording occurrences. We open a claim file. I mean, absolutely, that's absolutely right. You open a claim file because nobody would open an occurrence file. The district court says, well, we don't have an occurrence department. I have literally never heard of an insurance company that has an occurrence department. You have a claims department because what you're dealing with are claims by the insured for coverage. That's a little bit of an awkward point that claims actually has two meanings. One is that a claims-made policy or any policy will be triggered, will require a claim to be asserted against the insured. But a claim also means the insured's claim for coverage, right? So a claims department is the insurance company's department that handles policyholders' claims. But to the extent you open a claims file, that may be a reference to the insured's claim. But to the extent on this record, there's any references to the idea that there's a claimant or anything like that, that's all because it's only going to matter if and when a claim is filed. And at that point, Braylon Jordan will be the claimant. You wouldn't call that, you know, you wouldn't open a victim file. You wouldn't say that Braylon Jordan is a victim at that point. He's going to be the claimant if and when a claim is made or a lawsuit is filed. That's all that's going on there. Now, that's on those facts. But there is the antecedent, I think, legal question that, as Your Honor has already pointed out, there's no New York law that supports the proposition that the way that the insurance company internally treats its submission of a document, even if, even if Evanston had said, this is a claim internally and just called it a claim internally, that wouldn't make it a claim as a matter of law unless the claim satisfies the objective legal requirements for a claim. As this court said in Majalis, the way the insurance treats it is not evidence of whether or not it's a claim. It has to be an objective standard. And Judge Reeves doesn't have any law on this point, but they are relying heavily on the Southern District of Texas Pearson decision. Do you want to take a moment to talk about that? I think it was Southern District. Southern District of New York. I'm sorry. Southern District of New York. Right. So a couple of points on that. First of all, it's one federal judge. It's not a New York appellate decision to the extent it's, you know, as wrong, it's as wrong as Judge Reeves' decision. But I don't think the court needs to determine whether or not it's a correct assessment of claim because it's a completely different kind of situation. It's not deciding whether under a claims-made policy, whether the insurance internal treatment of the submission qualifies as a claims-based policy in that case. And in that case what the court was dealing with was the New York requirement that. Statutory requirement. Statutory requirement, exactly, that you disclaim coverage upon promptly upon the receipt of a notice of a claim. And the court was there was saying the way you responded, not just internally but also externally, and said to the insured we accept your claim, under those circumstances it's a functional kind of estoppel rule. Under those circumstances you can't later say that you didn't receive notice of a claim triggering your duty to disclaim coverage. So it's much more about notice than the underlying antecedent question, whether or not a claim was made, i.e., a demand for money or specific legal relief from the insured. That didn't happen here. I think we know from today and from the briefing that the April article that Judge Reeves focused on is not a claim, doesn't qualify to trigger coverage. So the only question now, I think, left is whether the June article qualifies as a claim. I've already discussed, I think, three reasons why it doesn't. You would say the claim clear as day is the December letter? Yes. I mean that's as close as anybody gets to a claim. I think it does qualify. And remind me, did that one purport to cross incorporate or refer back to these summertime events? It didn't, and that wouldn't have been effective. There are, and there's an interesting point here. But it would have been revealing if they thought they'd already filed the claim. Well, it might be that the insured thought they'd file a complaint, but Majalis says that doesn't matter, right? So it would be revealing of the insured's thinking on that, but it wouldn't be legally relevant. Step back for a minute since you have time and just describe to me the layers of insurance in this case. Great American settles for the full policy limit. This first excess insurer is whom? Is Evanston. Is Evanston's the first? I think that's right. And then Scottsdale, I believe, is above us. And is there another Indian head? Indian Harbor is the next year. Okay. So that's the party that would and should have covered the claim that is made in December of 2012. And does the record reflect whether they did or they came to a settlement or anything? They came to a settlement. They settled out and paid. So if a timely claim was made, it would be your position that the company actually had gotten a further insurer and that's resolved. Yes. I mean, that's how it was supposed to work. The claim is made within the relevant policy. But there's an important point here that comes out of Majalis, which is sort of the negative pregnant or something, the object lesson. In Majalis, there's another provision the court addresses that is perfectly common in claims made policies. And it's referred to in Majalis as the potential claim, coverage for potential claims. And that's the kind of coverage that would have applied here if it existed in these policies, in Evanston's policies. But it doesn't. For potential claim coverage, if you submit to the insurer basically a notice of occurrence that says this thing has happened and there's enough there to be clear that a claim could arise, then the policy will sort of look back. When a claim is later asserted, say it's six months later or six months after the reporting period, the policy will deem that claim to have been made when the notice of occurrence was submitted. So if that provision existed in this policy, this policy would apply. But it's precisely because that kind of provision doesn't exist here that there's no basis for coverage. The only basis for coverage would have been, potential coverage would have been under the Indian Harbor because no claim was made during the policy period, including the extended reporting period. This Cross the Field argument of yours seems to me much stronger. You can budget your time as you want. But I do have difficulty with the district court summary judgment. Do you want to try to turn to that? I'm happy to. I want to be sure that I've exhausted any queries or questions because I completely agree with you that this is a much more, we thought from day one, Your Honor, that this was a much more straightforward way of resolving. Well, it's not just straightforward. It's stronger. I have real difficulty with the district courts. And again, it's just three sentences citing no law. As far as I can tell, Judge Reeves just said the after the fact verdict is enough. And I don't see how that backs up into whether Zucker was plausible and reasonable in settling when he did. So I just want to be sure if there's no further inquiries on the, what I think of as the threshold issue in the case, the lack of a claim, I'm happy to turn to that. And I think there's two points to be made about that. And that's the, you're right. The essential point here is whether or not the court was correct in saying that the only path to coverage was through MNO. And I think the issue here is, this is sort of a unique situation where Zucker was insured only for MNO's acts and his acts on behalf of MNO, under the great American policy where we're following coverage on this point and LLC members insured only for the quote conduct of MNO's business. So any covered liability for Zucker would be entirely derivative of MNO's liability. He had no coverage for, no covered liability, for the claims against him personally, for what he personally did that were outside, were not in the pursuit of the conduct of MNO's business. And he was, of course, sued for personal acts and personal liability, namely the RICO claim, but there's no coverage for those acts. So I think what's, what is implicit, the best thing I can say about it is what's implicit in the court's analysis is that Zucker really couldn't settle out on his own MNO's rights to insurance for its own acts. Zucker had to wait and determine whether or not MNO was liable and therefore had insurance for those acts. And if it did, then Zucker could claim his part of that insurance. And that was your objection to the settlement on that basis? At the settlement, during the settlement process, we objected on different grounds because this issue wasn't right. This was part of the, remember the court said to the extent coverage, only to the extent there's coverage for the, left this issue open. In the product liability settlement objections, it was just about whether it was reasonable as a substantive matter and collusive. This was a coverage issue. And the court recognized it right from the beginning in saying, this is only going to work if there's ultimately coverage. And his view, and I think it's a defensible one, was that because Zucker's covered liability was going to be entirely derivative of MNO's liability, and MNO hadn't conceded anything. This was not a Luria-Cervidone type settlement by MNO. Everybody had to wait to see whether or not MNO was going to be held liable, thereby triggering coverage and triggering even Zucker's coverage. The second point I would make, a little bit different from that, is that at a minimum to establish, it's related, to establish coverage for the settlement, the Jordans had to prove below and have to show an appeal that Zucker had a reasonable belief in his liability for the covered claims. The standard, as we know, is that you have to settle a covered claim, and you have to have a reasonable belief in liability for that claim. Obviously, if you have a belief in liability for something that's not covered, that's not going to justify coverage of the settlement. The Jordans showing a trial focused only on his reasonable belief for products liability, of his exposure to products liability in general, all the problems that were going on in the case. They didn't focus on and distinguish between Zucker's reasonable belief in his liability for covered claims, as opposed to his belief that he was personally exposed and needed to get out of the case because of claims that would not be covered. On the brief on appeal, they still cite nothing to show his reasonable belief in the threat of covered liability. In the reply brief, they cite evidence that, well, he participated in the design of the product. That's the only thing they cite to show that there might be something that he did that would result in covered liability, because he was joining the employer, the LLC, in the commission of the tort. First of all... Wouldn't that be enough? I don't think it would be enough for a couple of reasons. First of all, it's not clear that that actually satisfies the requirement for a commission of a tort for participation in the employer's liability when you're just doing your job, as opposed to taking some sort of independent act that's intertwined with the employer's. How many people, I can't remember, were employed by the LLC at the time he designed or helped design these products? I don't know the answer to that. He may have been a designer. I'm just saying that is like his basic corporate job, and to hold a person personally liable for doing what you're supposed to do at your company, I don't think is what the commission of a tort or the corporate officer liability rule is about. I think it's about when the corporate officer personally engages in a tort. So if he had said, I'm going to design this so that we can hurt Braylon Jordan, or took specific, satisfied all the elements of a tort against a particular victim, that would be at least a different situation. But the other point, though, Your Honor, is even if that was enough to establish his personal liability that would also be covered, there's just no evidence that that's what he was worried about, that the theory that he settled because of a reasonable belief that that was the way he was going to be on the hook, as opposed to the RICO and conspiracy charges that would, conspiracy counts which would involve punitive damages. So I think there would need to be more work done to. But is it, I mean, is it reasonable to hold a defendant to that level? I mean, you know, it seems like to me if you're sued for all these things, you're worried about the whole thing, not just, well, goodness, I'm not going to stovepipe my worries about particular claims. I mean, how rigorous is this standard? Well, I think determining coverage is not uncommon after the fact to investigate the basis for a settlement. It's necessary. I mean, you have claims, cases all the time that settle when there's like, you know, five counts that settle and only one of them is a negligence count. And there's just a dollar figure, you know, entered in for the settlement of the five counts. And the insurance company only covers, you know, the one negligence count. It's common to do a post hoc investigation into the basis of the settlement and try to figure out how much is attributable to the one, the one covered liability. That's the key is it has, you're only covering covered claims. And so you do have to do sometimes some post hoc analysis to determine what the basis for the settlement was. Thank you very much, Your Honors. Thank you very much, Your Honors. Mr. Welsh, rebuttal. To answer Judge Wilson's question, there were three people involved in the design of the Buckyballs product, Mr. Zucker, his partner, Mr. Bronstein, and then one other employee. The product was never tested. It was simply put out by the three Internet sales, Mr. Bronstein and Mr. Zucker, who are Internet sales people. So that was it. I was thinking it was a pretty small company. I don't know that that's relevant. Well, again, just to answer the court's question, I did not get to address Mr. Zucker's reasonable belief during our initial argument. First of all, and we talked about it in our briefs, they never argue that at the trial court level. It doesn't appear anywhere in the pleadings. And these are the pleadings that Judge Reeves ordered be placed into this court record so that this court, the appellate court, would know what happened in the product liability case. They never argued that. And even if they did, there's clear evidence that Mr. Zucker had a reasonable belief because he was being advised by his attorneys. His attorneys were writing letters to Evanston saying, we're getting ready to settle this case because Mr. Zucker's personal assets are exposed. Here's a copy of the judgment. Here's a copy of the release. If you're not going to provide us coverage, we're going to settle. Because if you don't, they're going to collect against his personal assets. And those letters are in the record at page 4650 and page 4661. I did not mean any disrespect to the court when I said that that was not a fair question. Oh, I don't take any. You know, it's good to push back if it's a wrongful premise. But it's just a little frustrating on the side of the podium because I'm hearing questions from the court, and I'm familiar with the record, specifically the issue of whether or not the court, Judge Reeves, could look into the internal operating methods of the company that went to determine the issue of notice and look to the policy. At the district court level, Evanston was the first one to file for summary judgment, and in its first brief, Evanston writes, or Evanston cited the four notice provisions of its policy and said that those notice provisions were of particular relevance to the notice issue at the very heart of this DEC action with respect to the word claim. So Evanston invited the judge to look into its policy and to look into its internal actions in recording this claim by putting those words in its brief. No, I'm sympathetic to the district court's impatience, but just maybe take a moment. He has a very odd footnote trying to just say Majalis isn't implicated. And I'm not familiar with that footnote, that Majalis wasn't implicated. I'm sorry. Reed, the only citation to law on this, call it estoppel, call it an admission of a party opponent, is his acknowledgment that that's running counter to Majalis. Do you remember? Yes, I do remember that. But again, my response to that is it's decided on a case-by-case basis. And the court asked, again, the court asked whether or not the district court cited any cases for its support regarding notice in a newspaper article. And he did cite the security mutual, the New York case that we discussed earlier. It's on page five of his order, page 4110 in the record. So he did cite that New York case. But it's undisputed at the beginning of his order he says I'm not going to reach that difficult issue. Well, again, I go back to Evanston invited him into the policy to look at the notice provisions of the policy. And we've cited the case law to the court that says that he's entitled to do that and that he's entitled to consider their admissions. They haven't cited any case that says that the court can disregard that. I agree that the article itself is one component. But under the Majalis case and under a clear error review standard where he's got to look at the entire record and has been invited to do that, how can this court find clear error? The record plausibly supports. So it's a fact determination. It's a fact determination. But finish, you write our opinion then. The rule of law is when, even if it isn't a claim legally, when an insurer does what? No. That's not how you write it. You write it which says in order to determine whether or not it's a claim, the first step of this court is to look at the definition of a claim under New York law. And then you cite the case. It's virtually any assertion. And you cite that. Okay. And then cite Majalis in determining whether a specific demand is a claim, then you look at every case on a case-by-case basis. But you don't look at what the insured and insurer resolve or say to themselves. You look at whether the third party asserted liability against the insured. That's not what those New York cases say. You can look to the notice provisions of the policy, and if the notice provisions of the policy were met, then it's a claim. And I can't walk away without bringing this to the attention of the court. And, again, this is part of what I'm frustration on this side of the podium. The court panel was asking questions about the informality of the notice. Please understand that was not an issue at the lower court. At footnote eight of the court's opinion, the judge recognizes that the insurers who adopted each other's arguments admit that a claim could be informally made and made through the press. So the court didn't have an opportunity to address these questions that you're asking about the informality of the notice coming through an Internet article because all the parties admitted for purposes of trial that notice could be received in that manner. Okay. I think we have your case. We spent a lot of time on these, so don't worry. It's about sort of oral argument questions. We'll piece it out, go through it. Thank you, counsel. Thank you, Judge.